**[J-29-2017] [MO:Wecht, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| JOSEPH B. SCARNATI, SENATOR AND PRESIDENT PRO TEMPORE OF THE SENATE OF PENNSYLVANIA; JAKE CORMAN, SENATOR AND MAJORITY LEADER OF THE SENATE OF PENNSYLVANIA; JAY COSTA, SENATOR AND MINORITY LEADER OF THE SENATE OF PENNSYLVANIA, | : : : : : : : : | No. 3 MAP 2016<br><br>Appeal from the Order of the Commonwealth Court at No. 579 MD 2014, dated December 30, 2015 (finalized on January 29, 2016).<br><br>ARGUED: May 9, 2017 |
| Appellants | : : : : | |
| v. | : : : : | |
| TOM WOLF, GOVERNOR OF PENNSYLVANIA; RANDY ALBRIGHT, SECRETARY OF THE BUDGET; TIMOTHY A. REESE, STATE TREASURER OF PENNSYLVANIA; DENNIS M. DAVIN, SECRETARY OF COMMUNITY AND ECONOMIC DEVELOPMENT; CINDY ADAMS DUNN, SECRETARY OF CONSERVATION AND NATURAL RESOURCES; JOHN H. QUIGLEY, SECRETARY OF ENVIRONMENTAL PROTECTION; CURTIS M. TOPPER, SECRETARY OF GENERAL SERVICES; KATHY MANDERINO, SECRETARY OF LABOR & INDUSTRY; MAJOR GENERAL JAMES R. JOSEPH, ADJUTANT GENERAL OF PENNSYLVANIA; JOSH SHAPIRO, CHAIRMAN OF THE PENNSYLVANIA COMMISSION ON CRIME AND DELINQUENCY, | : : : : : : : : : : : : : : : : : : : : : | |
| Appellees | : : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE BAER**                                    **DECIDED:  November 22, 2017**

I join the Majority Opinion in substantial part but dissent from the disposition of the case.  Instead, based in part on issues raised in the Chief Justice's concurring opinion, I would remand to the Commonwealth Court for further consideration of whether the General Assembly was adjourned during the relevant time period for purposes of Article IV, Section 15 of the Pennsylvania Constitution.

In a great majority of situations, Article IV, Section 15 provides a very simple framework epitomizing the checks and balances of our bicameral legislature and tripartite system of government.[1]  If the Legislature passes a bill and the governor signs

---

[1] In full, Section 15, entitled **"Approval of bills; vetoes,"** provides:

> Every bill which shall have passed both Houses shall be presented to the Governor; if he approves he shall sign it, but if he shall not approve he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large upon their journal, and proceed to re-consider it. If after such re-consideration, two-thirds of all the members elected to that House shall agree to pass the bill, it shall be sent with the objections to the other House by which likewise it shall be re-considered, and if approved by two-thirds of all the members elected to that House it shall be a law; but in such cases the votes of both Houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journals of each House, respectively. If any bill shall not be returned by the Governor within ten days after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of the Commonwealth, and give notice thereof by public proclamation within thirty days after such adjournment.

(…continued)

it, the bill becomes law. If the Governor refuses to sign a bill passed by the Legislature, she is empowered by the Constitution to return the bill with relevant objections to the house in which it originated to allow the General Assembly to reconsider the bill in light of the objections. If the Governor neither signs nor returns the bill with objections within ten days, it becomes law, as if the Governor had signed it. The critical exception to this framework, relevant to the case at bar, concerns situations where the Governor is prevented from returning the bill with objections due to the adjournment of the General Assembly. In this limited circumstance, the Governor can veto the bill through public proclamation.

While this framework easily applies to most situations, difficulties arise because the language of Section 15 does not directly address any number of outlier situations, in part because it does not define "adjournment." Questions arise in regard to whether one or both houses must be adjourned, whether a short break constitutes an adjournment, and whether the adjourning bodies may only adjourn for purposes of Section 15 with the consent of the other house. In these cases, the Governor may not know whether a bill may be vetoed by returning it to the originating house or whether the Governor may utilize the proclamation veto procedure. If the Governor chooses incorrectly, the veto may be invalid.

In this case, we are faced with one species of questions relating to the adjournment of the General Assembly for purposes of Section 15. Specifically, while it is undisputed that both the House and Senate were not meeting, it is unclear whether they were constitutionally adjourned with the consent of the other house for purposes of preventing the Governor from returning the General Appropriations Act of 2014 (GAA)

(continued…)
PA. CONST. art. IV, § 15 (emphasis added).

and the Fiscal Code Amendments (FCA) with his objections. Moreover, the office of the House Parliamentarian was open when the Governor attempted to return the bills with his objections. I am concerned that the Majority Opinion may engender confusion for our sister branches of government regarding when the General Assembly is, in fact, adjourned, which, in turn, raises questions as to whether the Governor may utilize the proclamation veto power.

I agree with my colleagues in the Majority that the following sentence of Section 15 instructs that an adjournment for purposes of that section (hereinafter "Section 15 Adjournment") requires both the House of Representatives and the Senate to be adjourned:

> If any bill shall not be returned by the Governor within ten days after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of the Commonwealth, and give notice thereof by public proclamation within thirty days after such adjournment.

PA. CONST. art. IV, § 15. As explained by the Majority, given that the text surrounding this statement clearly distinguishes between the individual houses and the General Assembly, the use of the term "General Assembly" in this provision encompasses the Senate and the House. Maj. Op. at 18-19; *see also* PA. CONST. art. II, § 1 (defining the General Assembly as "consist[ing] of a Senate and a House of Representatives").

I additionally concur with the Majority Opinion that a Section 15 Adjournment is not limited to an adjournment *sine die*, defined as adjourning without appointing a day on which to reconvene and often referencing an adjournment at the end of a legislative session. *See* Maj. Op. at 4 n. 4, 20-21. Although I question the Majority's reliance on the analysis contained in a two paragraph footnote in *Jubelirer v. Pennsylvania Dept. of*

*State*, 859 A.2d 874, 877 n.2 (Pa. Cmwlth. 2004), I conclude, as explained below, that other sections of the Constitution support the Majority's holding that a Section 15 Adjournment is not limited to an adjournment *sine die*.

In contrast to the use of the generic term "adjournment" in Section 15, the drafters of Article IV demonstrated the ability to apply the more specific and limited term "adjournment *sine die*" in Section 8(b), a provision in Article IV addressing the Governor's appointment powers.[2] In contrast, the absence of limiting language in Section 15 indicates that the term should be read broadly.

Additionally, Article II of the Constitution, which governs the Legislature, specifically addresses adjournment in Section 14, entitled "Adjournments," which provides, "Neither House shall, without the consent of the other, adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting." PA. CONST. art. II, § 14. This sentence demonstrates that the drafters utilized the unadorned term "adjournment" to encompass not only adjournments *sine die* but all adjournments, even those lasting as few as three days. Indeed, an adjournment could arguably last fewer than three days. Thus, I agree with my colleagues that a Section 15 Adjournment is not limited to an adjournment *sine die*.

However, given that a Section 15 Adjournment encompasses short adjournments, I do not adopt the Majority Opinion's use of "temporary recess" terminology as a category separate from a Section 15 Adjournment. *See* Maj. Op. at 20. Instead, I conclude that a Section 15 Adjournment encompasses any length of adjournment so long as both houses are adjourned.

---

[2] In relevant part, Section 8(b) provides, "If the nomination is made during a recess or after adjournment *sine die*, the Senate shall act upon it within 25 legislative days after its return or reconvening." PA. CONST. art. IV, § 8(b).

I additionally part from my colleagues' presumption that the House and Senate were adjourned on the relevant date for purposes of Section 15. *See* Maj. Op. at 22-23. As noted, this is a prerequisite determination in this case because if the General Assembly was not adjourned for purposes of Section 15, then it will not be deemed to have prevented the Governor from returning the bill with his objections. If he was not prevented from returning the bill, then his return in this case would have constituted a valid veto and he would not have been constitutionally authorized to utilize the proclamation veto procedure. Thus, it is critical for us to consider first whether the General Assembly was constitutionally adjourned.

In this case, the presumption of adjournment is based solely on unilateral notations in the Senate and House's respective legislative journals. Indeed, the question is further muddied because, while the House indicated that it was "adjourn[ed]" from July 9 to August 4, 2014, unless recalled sooner, the Senate merely noted on the legislative record that it was "recess[ed]" from July 8 until September 15, 2014, unless recalled sooner. *2014 Pa. Legislative Journal—House* 1234 (July 9, 2014), *2014 Pa. Legislative Journal—Senate* 2124 (July 8, 2014). In addition to this arguably lax terminology in the Legislative Journals, I am not convinced that these unilateral legislative notations comply with Article II, Section 14's requirement that a house obtain the consent of the other house to adjourn for more than three days.[3]

---

[3] While I fully agree with the Majority Opinion's observation that the focus of Article II, Section 14 is on the dangers of unilateral adjournment, the plain text applies to all adjournments of more than three days and is not limited to adjournments of one chamber without the other chamber. As noted by the Majority Opinion, this Court explained the purpose of Section 14 in *Frame v. Sutherland*, 327 A.2d 623 (Pa. 1974) as follows:

> The reason of policy for this requirement is not difficult to discern. Because each house is powerless to enact

(…continued)

As noted by the Commonwealth Court, a factual question exists as to whether this was a constitutionally compliant adjournment for purposes of Section 15. *Scarnati v. Wolf*, 135 A.3d 200, 214-15 (Pa. Cmwlth. 2015) (observing that the record did not reflect whether both houses had adjourned with the consent of the other and concluding that "at this stage of the proceedings, we cannot hold as a matter of law that an adjournment by the General Assembly required the Governor to give notice of his actions by public proclamation"). As stated, if the General Assembly was not constitutionally adjourned, then, seemingly, the Governor properly returned the bill with

(continued…)

> legislation alone, each has a strong interest in insuring that bills passed by it are considered by the other house. The greatest threat to this interest is the possibility that the other house might adjourn, thus disabling itself from the consideration of bills. Protection against this possibility is provided each house by the Constitution in the form of a power to refuse to consent to the adjournment of the other house.

*Id. at* 626–27 (footnote omitted) (holding that the Senate was not constitutionally adjourned absent the consent of the House for purposes of triggering the Governor's recess appointment power under Article IV, Section 8(b)). The Court in *Frame* further explained Section 14's exception from the consent requirement for adjournments of less than four days, noting that it allowed "flexibility in the administration of the legislative calendar" while "present[ing] a minimal threat to each house's interest in the consideration by the other of its bills." *Id.*

While I acknowledge that the threat of unilateral adjournment is not directly at issue in the case at bar, the text of Article II, Section 14 nevertheless applies to the adjournment in this case, which exceeded three days, and to all such cases. Moreover, our holding regarding what is required for an Article IV, Section 15 Adjournment will apply beyond this case. In deciding this case, we should be vigilant not to run afoul of our Constitution's plain language nor to create a situation where the Governor would be forced to guess whether both houses of the General Assembly have consented to the adjournment of the other, such that they are constitutionally adjourned.

his objections in accord with Article IV, Section 15.[4]  Accordingly, I would remand for legal and factual determinations of whether the General Assembly was constitutionally adjourned for purposes of Article IV, Section 15, preventing the Governor from constitutionally returning the bill.

A remand is required under my analysis because I join the Majority Opinion in rejecting the Commonwealth Court's ultimate determination that the Governor vetoed the GAA and FCA by proclamation.  I agree that a proclamation must provide the constitutionally required information regarding the filing of the bill and objections with the Secretary of the Commonwealth, even if the method of presenting the information is not specifically dictated by Section 15.

Accordingly, I dissent to Majority Opinion's disposition in this case, which is based upon the conclusion that the Governor's veto by return was constitutionally deficient.  Instead, I would remand to the Commonwealth Court for further proceedings to determine whether the General Assembly was adjourned for purposes of Article IV, Section 15.  If so, the Majority Opinion is correct that the Appellant Senators should be granted summary relief because the Governor's veto by proclamation attempt failed to

---

[4] I recognize that there is a dispute as to whether the Governor's return of the bills to the House Parliamentarian constitutes a return for purposes of Section 15.  *See* Maj. Op. at 36 n.16.  I observe that the language of Section 15 does not speak to this scenario, and thus, I conclude it is not forbidden.  I acknowledge that an inconsistency exists between refusing to allow the Governor to return a vetoed bill to an agent when both houses of the General Assembly are constitutionally adjourned and allowing return to an agent when only the originating house is adjourned or when the General Assembly has not met the constitutional requirements for adjournment.  However, we are bound by the language of the Constitution which prevents the Governor's return only when the "General Assembly" is adjourned, despite the benefits of immediate public notice obtained by returning the vetoed bill to a house only when it is in session or via public proclamation, as ably espoused by the Majority Opinion.

satisfy Article IV, Section 15. In contrast, if the General Assembly was not constitutionally adjourned, the Governor should prevail.

Justice Dougherty joins this concurring and dissenting opinion.